UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
: 
ELAINE KALLINIKOS,                              :
:
                              Plaintiff,        :
:
          - against -                           :           **MEMORANDUM DECISION**
:           **AND ORDER**
NEW YORK STATE DEPARTMENT OF                    :
CORRECTIONS AND COMMUNITY                       :           19-cv-331 (BMC)
SUPERVISION; SABRINA DRAYTON;                   :
RODNEY YOUNG; MURIEL HARVEY;                    :
DEPUTY COMMISSIONER STEVEN                      :
CLAUDIO; NIGEL JOSEPH,                          :
:
                              Defendants.       :
:
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff commenced this action alleging violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1983, claiming that defendants

discriminated against her based on her appearance and religious traditions.[1]  Through a single

motion, defendants Young and Joseph have moved to dismiss the complaint under Federal Rule

of Civil Procedure 12(b)(5), and all moving defendants[2] have moved to dismiss the complaint in

part under Rule 12(b)(6).  For the reasons below, defendants' [24] motion is granted in part and

denied in part.

---

[1] Plaintiff has abandoned her claims under state law and 42 U.S.C. § 1981.

[2] The moving defendants are all the named defendants except for Steven Claudio, who has since retired, and who
plaintiff cannot locate for the purpose of service.  He is therefore dismissed.  See Fed. R. Civ. P. 4(m).

# BACKGROUND[3]

Plaintiff is a Jewish woman of Ashkenazic background. She has been employed by defendant New York State Department of Corrections and Community Supervision ("DOCCS") for at least 25 years. Plaintiff has held various positions during her employment with DOCCS.

In 2016, when plaintiff was serving as a Parole Revocation Specialist, she decided to transfer to an office in another borough. Plaintiff was required to interview against a list of candidates before her transfer request was accepted. Other Revocation Specialists were permitted to transfer without having to interview, even though they were on probation at the time. Those candidates were of a different background and religion than plaintiff.[4]

In January 2017, plaintiff became eligible for a promotion to Supervising Parole Officer. She took an exam required for that promotion and received a score of 80.[5] Plaintiff interviewed for the Supervising Parole Officer position five times: in January, April, May, August, and December 2017. She was not promoted to the job after each interview. Eleven candidates were chosen over plaintiff for the position. Plaintiff had superior grades, experience, and credentials than many of those candidates.

In February 2017, defendant Claudio made a site visit to the Brooklyn DOCCS office where plaintiff worked. Claudio told plaintiff that she is "a good senior." Plaintiff told Claudio

---

[3] These facts are taken from plaintiff's complaint. For the purpose of defendants' Rule 12(b)(6) motion, they are assumed true and are construed in the light most favorable to plaintiff. These facts are not relevant to defendants' Rule 12(b)(5) motion, however. On a Rule 12(b)(5) motion, the Court looks to matters outside the complaint, and the plaintiff bears the burden of demonstrating that service was proper. See Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F.Supp.2d 382, 387 (S.D.N.Y. 2002).

[4] Here and elsewhere in the complaint, plaintiff alleges that the relevant other candidates were of a "preferred" race and religion. That allegation is not entitled to the presumption of truth. It is a mere conclusion unsupported by any facts, such as why defendants preferred the other candidates' race or religion. Plaintiff has, however, adequately alleged that she has a different religious background than the other candidates, which is the operative fact for purposes of this motion.

[5] Plaintiff alleges that this is a high score, although she does not include any facts to support that claim.

that she interviewed for the promotion in both the Bronx and Brooklyn, Claudio replied that he knew plaintiff applied and said, "I know everything about you." Claudio had oversight over promotions and decision-making authority at DOCCS.

After plaintiff interviewed for the position in May 2017, she was not selected, but the position remained vacant for several months. Defendant Joseph – a Regional Director – filled the position at the end of September 2017 with an individual who had a different background and religion than plaintiff but who was on probation at the time. Defendant Drayton – also a Regional Director – promoted a separate candidate in May 2017, although that candidate had less experience and seniority as plaintiff. This candidate also had a different background and religion than plaintiff, but the candidate shared the same background and religion as the other promoted candidates.

Defendants Young and Harvey interviewed plaintiff in August 2017 for the Supervising Parole Officer position. Four other candidates were promoted instead of plaintiff. These candidates were also Parole Revocation Specialists, like plaintiff, but they shared the same religious background as the panel members, unlike plaintiff. The four promoted candidates had less experience than plaintiff, and three of them also had inferior credentials.

The structure of the interview was changed in December 2017. A writing sample was added to the requirements. As it is alleged in the complaint, "[t]he newly included required writing sample . . . which became part of the interview presented inaccurate and/or incomplete info on which to base the writing sample." Plaintiff confronted the panel of interviewers (defendants Young, Drayton, and Harvey) to inform them that the writing sample was problematic, but the panel told her not to be concerned. Plaintiff's writing sample was misplaced and was not considered towards her candidacy for the position.

Of all the candidates who interviewed for the promotion, plaintiff was the only Jewish candidate, the only candidate of an Ashkenazic background, and the only candidate who was not promoted during those interviews. At some unidentified time, plaintiff was told by an unidentified person that her lack of promotion was judged solely on her interview and her other credentials were discredited.

On September 20, 2018, Plaintiff elected to make a lateral transfer from her role as Revocation Specialist to the role of Senior Parole Officer.[6] Defendants required plaintiff to undergo a probationary period in that transition. Plaintiff was told the probationary period could last three months, but she was still serving it at the time she filed her complaint on January 16, 2019.

DOCCS has not acknowledged that plaintiff previously served as a Senior Parole Officer for years, which required her to pass a probationary period of 11 months. Defendant Harvey is plaintiff's immediate supervisor in this current transition. Harvey was previously plaintiff's immediate supervisor for that position and went through the probationary training with plaintiff in 2004. Plaintiff has tried to arrange a meeting with the Bureau Chief and his boss to resolve this issue, but she has not received any response.

## DISCUSSION

### I. Rule 12(b)(5)

Defendants Young and Joseph have moved to dismiss all the allegations in the complaint against them for insufficient service of process under Rule 12(b)(5). Federal Rule of Civil Procedure 4 governs service in federal courts.

---

[6] It appears that Senior Parole Officer is a different position than Supervising Parole Officer, which is the position for which plaintiff applied in 2017.

### A. Defendant Young

Rule 4(c) governs the timing of service, which is relevant to defendant Young's 12(b)(5) motion. It provides that "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Rule 4(m), in turn, provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If, however, plaintiff can show good cause for the failure to serve a defendant, "the court must extend the time for service for an appropriate period."

A process server personally served defendant Young with the summons and complaint on April 17, 2019. As noted above, plaintiff filed her complaint on January 16, 2019. Under Rule 4(m), her time to serve defendants expired on April 16, 2019 – one day before she served defendant Young. Plaintiff has not responded to this part of defendants' motion or given any explanation for her delay in serving Young.

Because plaintiff has not offered any good cause for her failure to serve defendant Young, the claims against him are dismissed.

### B. Defendant Joseph

Rule 4(e) governs the method of service, which is relevant to defendant Joseph's 12(b)(5) motion. Rule 4(e)(1) provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." As relevant here, Rule 4(e)(2)(C) also provides that an individual may be served by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process."

Defendant Joseph received the summons and complaint on April 11, 2019. A process server left the summons and complaint with Institutional Safety Officer Merkerson at the

DOCCS office located in Queens, and a secretary later gave the papers to defendant Joseph. Plaintiff also mailed the summons and complaint to the Queens office. Defendant Joseph states that his actual and official place of business is the DOCCS office in Manhattan, not Queens. On average, defendant Joseph conducts official business at the Queens office fewer than five times a month.

Under New York law, a person may be served "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business . . . such delivery and mailing to be effected within twenty days of each other." N.Y.C.P.L.R. § 308(2). In addition, service can also be effected under New York law "by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318." Rule 318, in turn, provides in relevant part that "[a] person may be designated by a natural person, corporation or partnership as an agent for service in a writing, executed and acknowledged in the same manner as a deed, with the consent of the agent endorsed thereon," which designation must be filed in the office of the clerk of the county in which the person resides.

Defendant Joseph contends that the Queens office is not his actual place of business, and that he has not designated Officer Merkerson as his agent for service, so plaintiff's service was ineffective under the relevant state and federal rules.

Plaintiff has not demonstrated that Officer Merkerson was defendant Joseph's agent for service, so service was ineffective under Rule 4(e)(2)(C). Thus, defendant Joseph's motion depends on whether the Queens office is properly considered his "actual" place of business under C.P.L.R. § 308(2).

For the purpose of § 308(2), a person's "actual place of business" includes "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." N.Y.C.P.L.R. 308(6). "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her with that place of business." TAGC Mgmt., LLC v. Lehman, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (quoting Velez v. Vassallo, 203 F. Supp.2d 312, 325 (S.D.N.Y. 2002)). An individual can have more than one actual place of business. See Warshun v. New York Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013).

Defendant Joseph is a high-level employee of DOCCSS. Although his primary office is in Manhattan, he conducts official business in the Queens office on average five times per month. That constitutes the regular transaction of business under New York law. See Selmani v. City of New York, 100 A.D.3d 861, 954 N.Y.S.2d 580, 581-82 (2d Dep't 2012) ("A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location."). Defendant Joseph might not be at the Queens office every day, but the daily transaction of business is not the relevant standard. It is the regular transaction of business, and the implication underlying defendant Joseph's affidavit is that he regularly goes to the Queens office to conduct business on average five times every month.[7]

---

[7] It is not clear what defendant Joseph means by his assertion that he is at the Queens office on average fewer than five times per month. But it does not matter whether the real average is three, four, or five times per month. (And presumably, if he were present at the Queens office fewer times than that, he would have used the applicable smaller numbers.) What is relevant is his use of "on average." This means that some months, defendant Joseph is at the Queens office more than five times per month, which is a substantial and meaningful portion of the month.

This is especially true, given that the Queens office is where plaintiff interacted with

defendant Joseph, and because defendant Joseph has a business relationship with that office.  The

Manhattan and Queens offices are both associated with defendant Joseph's

employer – DOCCS – and his work at both offices is for that employer.  As the court in <u>Leung v.</u>

<u>New York Univ.</u>, No. 08-CV-05150, 2016 WL 1084141, at *7 (S.D.N.Y. Mar. 17, 2016),

explained:

> There are several facts that are relevant to a determination of whether delivery has
> been made at a defendant's "actual place of business" for purposes of effecting
> service of process pursuant to CPLR 308(2).  Whether the plaintiff's process
> server could have reasonably relied on the person to whom delivery was made to
> redeliver the summons and complaint to the defendant is particularly relevant.
> Answering this inquiry requires the court to consider both the defendant's
> relationship to the specific organization with which the recipient is affiliated, as
> well as the recipient's role at that organization.  The defendant's regular, physical
> proximity to the location at which delivery is made is also relevant both to this
> inquiry and the ultimate determination.

Plaintiff served defendant Joseph – now an Assistant Commissioner for Community

Supervision for DOCCS – at a Community Supervision office (the "CS" in DOCCS) where

defendant Joseph conducts official business on average five times per month.  Plaintiff's process

server was entitled to rely on defendant Joseph's direct business relationship with the Queens

office, as well as plaintiff's experience of working with defendant Joseph at that location, in

effecting service and determining that the summons and complaint would be redelivered to him

(as they were, in fact).  That is enough to make the Queens office defendant Joseph's "actual

place of business" for purposes of C.P.L.R. § 308(2).  <u>See</u> <u>Glasser v. Keller</u>, 149 Misc. 2d 875,

877, 567 N.Y.S.2d 981, 982 (Sup. Ct. 1991) ("The fact that a defendant does business in a given

place does not necessarily make it *his* place of business.  There must be an identification of the

defendant's business with the place, such as comes with employment or proprietorship . . . .")

(alterations in original); <u>see also</u> <u>Leung</u>, 2016 WL 1084141, at *7 ("Whether service has

complied with CPLR 308(2) depends on whether the method of service was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (internal quotation marks omitted).

Thus, defendant Joseph's motion to dismiss under Rule 12(b)(5) is denied.

## II.    Timeliness

Title VII plaintiffs must exhaust their administrative remedies before filing a lawsuit in federal court.  See 42 U.S.C. § 2000e-5(e)(1); Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126 (2d Cir. 2010).  The relevant statute of limitations for filing an administrative claim is 300 days from the alleged discriminatory employment practices.  See Ragone, 595 F.3d at 126. In other words, a Title VII claim is timely filed in federal court if the adverse employment action underlying that claim occurred within the 300 days prior to the plaintiff's filing of a charge with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff filed an EEOC charge related to her Title VII claims in this case on February 8, 2018.  Thus, recovery for any discriminatory employment practices alleged in her federal complaint that occurred before April 14, 2017 is time-barred.  This includes plaintiff's allegations that in 2016 she was required to interview before her request for an intra-agency transfer was accepted while other transferees of a different background and religion did not have to interview; and her allegation that defendants failed to promote her to Supervising Parole Officer when she first interviewed for the position in January 2017.

Plaintiff argues that she is entitled to an exception for her time-barred claims under the continuing violation doctrine.  "Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Washington v. Cty. of Richmond, 373 F.3d 310, 317 (alterations in original) (quoting Fitzgerald

v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)).  "Conduct that has been characterized as a continuing violation is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"  Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002)).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Morgan, 536 U.S. at 113.

"Discrete acts such as termination, *failure to promote*, *denial of transfer*, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Id. at 115 (emphasis added).  Thus, plaintiff's discrete allegations of having to interview for her intra-agency transfer in 2016 and not being promoted following her interview for the Supervising Parole Officer position in January 2017 must be dismissed.

Plaintiff's argument that she had no reason to believe she was being discriminated against before December 2017 – because defendants' alleged discriminatory conduct only became obvious to her over time and multiple occurrences – is of no import.  The Second Circuit rejected this argument in Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012).  There, it explained that "[d]iscrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."  Id.  Consequently, "under Morgan, every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline."  Id.

Thus, only plaintiff's timely Title VII claims for defendants' failure to promote her in April, May, August, and December 2017 and for keeping her on probation after she transferred to the role of Senior Parole Officer despite previously having served in that role remain.[8]

Plaintiff's § 1983 claims do not have the same exhaustion requirement as her Title VII claims. They carry a three-year statute of limitations. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997). Thus, plaintiff's § 1983 claims concerning the January 2017 failure to promote, and the 2016 interview related to her intra-agency transfer are not time-barred.

### III.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citations omitted). Said otherwise, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In conducting the above analysis, the Court must accept as true all the well-pled allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to

---

[8] Of course, that does not mean plaintiff's untimely claims are irrelevant to her timely ones. Plaintiff is free to use them as further evidence of discrimination with respect to her timely claims. See Morgan, 536 U.S. at 113 ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

## A. Title VII

Where, as here, there is no direct evidence of discrimination, a plaintiff's Title VII claims "must be plausibly supported by facts alleged in the complaint [] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). To be clear, plaintiff need not at this stage allege facts that "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; she must only plead facts that "give plausible support to a minimal inference of discriminatory motivation." Id.; see also Polanco v. City of New York, No. 16-CV-09196, 2018 WL 3178225, at *4 (S.D.N.Y. June 27, 2018) (quoting Bermudez v. City of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)) ("'Although "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination" in order to survive a motion to dismiss,' a plaintiff 'must allege sufficient facts showing that [she] is entitled to relief.'"). This is a low threshold pleading standard that plaintiff has, for the most part, met.

As for the first requirement, plaintiff's complaint alleges that she was a member of a protected class based on her religion.

Construed in the light most favorable to her, plaintiff's complaint also plausibly alleges the second requirement – that she was qualified. Plaintiff scored an 80 on the qualifying exam for Supervising Parole Officer, had 25 years of experience, was told she was a "good senior," and was able to interview for the position five times.

Third, plaintiff has plausibly alleged adverse employment actions. "An 'adverse employment action' means 'a materially adverse change in the terms and conditions of employment' and includes, among other things, termination, demotion or a failure to promote." Richard v. New York City Dep't of Educ., No. 16-CV-957, 2017 WL 1232498, at *11 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citations omitted). By comparison, "conduct that is a mere inconvenience does not rise to the level of an adverse employment action." Id. (internal quotation marks and citations omitted).

Plaintiff alleges that following her interviews in April, May, August, and December 2017, defendants failed to promote her to Supervising Parole Officer. These clearly constitute adverse employment actions according to the above standard.

Plaintiff also alleges that following her request to transfer into the role of Senior Parole Officer in 2018, she was required to serve an extended involuntary probationary period. Defendants argue that this probation constitutes a "mere inconvenience," and is not actionable as a result. "District courts within the Second Circuit have often found that reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay *or being placed on probation*." Dotson v. City of Syracuse, No. 518CV750, 2019 WL 2009076, at *3 (N.D.N.Y. May 7, 2019) (internal quotation marks and alterations omitted) (emphasis added) (quoting Abraham v. Potter, 494 F. Supp. 2d 141, 147-48 (D. Conn. 2007); Honey v. Cty. of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)); see also Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 245 (N.D.N.Y. 2010). Although it appears that plaintiff's probation was not a punitive measure, and it might be simply a period of closer scrutiny, plaintiff has at least plausibly alleged that her

extended period of probation has had a negative impact on the terms and conditions of her

employment as a Senior Parole Officer to deem this an adverse employment action.

With respect to the final requirement, an inference of discrimination can arise from, *inter

alia*, "the more favorable treatment of employees not in the protected group; or the sequence of

events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (quoting Leibowitz v.

Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). For example, the Second Circuit has stated

that "[t]he fact that a plaintiff was replaced by someone outside the protected class will

ordinarily suffice for the required inference of discrimination at the initial prima facie stage of

the Title VII analysis, including at the pleading stage." Id. at 313.

Plaintiff has alleged enough facts to survive a motion to dismiss on the substance of her

claims related to defendants' failure to promote her. She has alleged that she interviewed for the

role of Supervising Parole Officer five times and was never promoted. She has also alleged that

she was the only candidate of her specific religious tradition and background. But the 11 other

candidates who were promoted over her were of a different background and religion than

plaintiff and shared the same background and religion as defendants and each other.

It is worth noting here that (as relevant) defendants have only moved to dismiss

plaintiff's Title VII claims with respect to the April and December 2017 interviews, because

plaintiff has not alleged any facts specific to those interviews. This argument is unavailing.

Although each failure to promote is a discrete act with respect to the timeliness of plaintiff's

allegations, the complaint fairly incorporates the same set of circumstances as to each interview

that happened in 2017. The same individual defendants might not have sat on the interviewing

panel in April, but plaintiff alleges that in total 11 candidates of a different religious background

were promoted over her in 2017, which includes the April interview. DOCCS may still be liable

for that instance of an alleged failure to promote, given the facts alleged elsewhere in the complaint and the low pleading standard for Title VII claims.

The same is not true, however, with respect to plaintiff's claims about the extended probationary period she had to serve in 2018 related to her intra-agency transfer to Senior Parole Officer. Plaintiff has not alleged any facts to suggest that the decision to put and keep her on probation is due to any discrimination on defendants' part. There are no allegations that individuals of other backgrounds or religions were treated differently than plaintiff, and absent any such facts, there is no plausible inference of discrimination that can be drawn with respect to this claim. It must therefore be dismissed.

As defendants point out, plaintiff for the first time in her opposition to defendants' motion to dismiss states that she was forced to undergo this probation period "under the basis of reasonable accommodation, hostile work environment, retaliation and by treating to undermine [her] differently from the other class of employees who are from favored class of workers, specifically non-Jewish." Plaintiff also claims that the extension of the probationary period was "undertaken as a punitive function, it was not obligatory and it is reasonable for the trier of facts to conclude that its only purpose was done to further punish and humiliate the Plaintiff in furtherance of its hostile campaign against her." In addition, plaintiff claims that defendants "instructed" her that she was going to be transferred from Revocation Specialist to Senior Parole Officer once defendants learned about plaintiff's EEOC charge. These allegations were not in her complaint (and indeed, they contradict the allegations that are in the complaint). Even if they were in the complaint, they tend to support the proposition that although the probationary period may have been an adverse employment action, plaintiff has not connected the probationary

period to any inference of discrimination, so those new allegations would not affect the outcome here.

Plaintiff cannot amend her pleadings through her briefing on defendants' motion to dismiss. See In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001). Nor did plaintiff request leave to file an amended complaint in light of defendants' motion to dismiss. The complaint gives rise to no inference that the decision to put and keep plaintiff on probation pending her intra-agency role transfer was related in any way to any sort of discriminatory animus. Her claim is therefore dismissed. Cf. Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (noting that although Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted, "no court can be said to have erred in failing to grant a request that was not made").

Thus, the only Title VII claims that remain are plaintiff's claims against DOCCS[9] for its failure to promote her in April, May, August, and December 2017.

### B. Section 1983

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state

---

[9] It is not clear from the complaint, but to the extent plaintiff attempts to bring Title VII claims against the individual defendants, those claims are dismissed. "Title VII 'does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.'" Littlejohn, 795 F.3d at 313 (quoting Raspardo v. Carlone, 770 F.3d 97, 113 (2d Cir. 2014). Plaintiff has included no facts to suggest that the individual defendants are her actual employers, rather than her supervisors, and so plaintiff's Title VII claims are only actionable against her employer, defendant DOCCS.

law.'"  Harrison v. New York, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)).

"Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, 'protect[s] public employees from various forms of discrimination, including . . . disparate treatment.'"  Littlejohn, 795 F.3d at 320 (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); see also Sulehria v. City of New York, 670 F. Supp. 2d 288, 322 (S.D.N.Y. 2009) ("There is no question that the courts have long recognized that the Equal Protection Clause protects individuals from intentional discrimination under color of state law on the basis of race, national origin, or religion.").  The same core standard applies to plaintiff's § 1983 claims as her Title VII claims.  See Demoret v. Zegarelli, 451 F.3d 140, 153 (2d Cir. 2006) ("Title VII claims for disparate treatment parallel the equal protection claims brought under § 1983.  The elements of one are generally the same as the elements of the other and the two must stand or fall together.") (internal quotation marks and citations omitted); St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 303 (E.D.N.Y. 2014) ("Under Title VII, § 1983 and the NYSHRL, disparate treatment religious discrimination claims are assessed using the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."); see also Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 225-26 (2d Cir. 2004); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996).

As an initial matter, Section 1983 claims against state agencies are barred by the Eleventh Amendment absent the State's consent.  See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Quern v. Jordan, 440 U.S. 332, 352 (1979)); see also Armstead v. Dep't of Corr. Cmty. Supervision, No. 13-CV-88, 2013 WL 1312017, at *3 (E.D.N.Y. Mar. 28, 2013) ("[The plaintiff's] claims against

DOP and DOCCS also fail because these entities are arms of the State of New York. As such, they are immune under the 11th Amendment from suits for damages in federal court."). Because New York State has not consented to suit under § 1983, plaintiff's § 1983 claims against DOCCS – a state agency – are dismissed under the Eleventh Amendment.

With respect to the individual defendants, because vicarious liability is inapplicable in § 1983 suits, "[a]n individual may be held liable under [§] 1983 only if that individual is personally involved in the alleged deprivation." Littlejohn, 795 F.3d at 314 (internal quotation marks and citations omitted). Personal involvement can be shown by facts that support an inference that: (1) "the defendant participated directly in the alleged constitutional violation"; (2) "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"; (3) "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts"; or (5) "the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." Id. (alterations in original) (quoting Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)).

Here, plaintiff has alleged the direct personal involvement of individual defendants Harvey, Drayton, and Joseph with respect to the May, August, and December 2017 interviews.[10] According to the facts alleged in the complaint, those defendants sat on the interview panels, considered plaintiff for the promotion, and promoted other candidates to the position instead of plaintiff. Considered alongside the facts discussed above which give rise to the slight inference

---

[10] The complaint has been dismissed against defendants Young and Claudio, so the allegations against those defendants are not addressed here.

of discrimination under the low pleading standard for discrimination claims, this is enough to maintain the § 1983 claims against the individual defendants for those incidents.

Plaintiff has not, however, alleged any facts about the individual defendants' personal involvement in the 2016 interview related to her intra-agency transfer between borough offices or the January or April 2017 failures to promote her to Supervising Parole Officer, and therefore, her § 1983 claims against them based on those incidents must be dismissed.

Finally, although plaintiff has alleged defendant Harvey's personal involvement in the September 2018 probationary period related to plaintiff's intra-agency transfer to Senior Parole Officer, as discussed above, plaintiff's allegations give rise to absolutely no inference – not even the minimal pleading standard permitted for disparate treatment claims – that defendant Harvey's decision to keep plaintiff on probation was due in any part to discrimination. Because plaintiff has not alleged the personal involvement of any defendant (except DOCCS) about this incident, her § 1983 claim related to her 2018 probation is dismissed.

## CONCLUSION

Accordingly, defendant Young's motion to dismiss under Rule 12(b)(5) is GRANTED, defendant Joseph's motion to dismiss under Rule 12(b)(5) is DENIED, and the moving defendants' motion to dismiss under Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART.

Plaintiff's complaint can go forward against DOCCS with respect to her Title VII claims for its failure to promote her after the April, May, August, and December 2017 interviews. Plaintiff's complaint can go forward against the individual defendants with respect to her § 1983

claims for their failure to promote her after the May, August, and December 2017 interviews.

Defendants Young and Claudio are dismissed for failure to effect service.

**SO ORDERED.**


Dated: Brooklyn, New York                    _____
            July 16, 2019                                          U.S.D.J.