UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ELAINE KALLINIKOS,

                        Plaintiff,

            - against -                     **MEMORANDUM DECISION AND ORDER**

NEW YORK STATE DEPARTMENT OF       19-cv-331 (BMC)
CORRECTIONS AND COMMUNITY
SUPERVISION; SABRINA DRAYTON;
RODNEY YOUNG; MURIEL HARVEY;
DEPUTY COMMISSIONER STEVEN
CLAUDIO; NIGEL JOSEPH,

                        Defendants.
----------------------------------------------------------- X

**COGAN**, District Judge.

      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1983. Plaintiff claims that defendants discriminated against her based on her race and religion. Plaintiff brings Title VII claims against defendant New York State Department of Corrections and Community Supervision ("DOCCS") for employment discrimination in failing to promote her in April, May, August, and December 2017 and brings § 1983 claims against defendants Drayton, Harvey, and Joseph (the "individual defendants") for their roles in selecting candidates for promotion in May, August, and December 2017.[1]

      This case is before me on defendants' motion for summary judgment. I hold that defendants had a legitimate, nondiscriminatory, and non-pretextual reason for not promoting plaintiff. Defendants are entitled to summary judgment on all claims.

---

[1] Plaintiff has withdrawn her claims under state law and 42 U.S.C. § 1981. In addition, I dismissed plaintiff's Title VII claim against DOCCS for the January 2017 promotion as untimely and her § 1983 claims against the individual defendants for the January and April 2017 promotions because no individual defendant was involved in those positions' selection. I discuss the January interview below for its relevance to plaintiff's interview performance generally and the qualifications of the candidate selected in May 2017.

**BACKGROUND**

The facts are taken from defendants' 56.1 Statement and are treated as uncontested to the extent they are supported by evidence in the record.[2]

Plaintiff is a white, Jewish woman of Ashkenazic background.[3] She has been employed by DOCCS or its predecessor since 1991. Plaintiff has held various positions during her employment with DOCCS. Plaintiff worked as a Senior Parole Officer ("SPO") for several years in the early 2000s and as a Parole Revocation Specialist ("PRS") from 2007 to 2018. In September 2018, plaintiff transferred from PRS to SPO, thinking it would put her in a better position for promotion to Bureau Chief, but she resigned from that position and returned to a PRS assignment in February 2019. As an SPO, plaintiff's duties included supervising parole officers and presenting recommendations to the Parole Board. As a PRS, plaintiff served as the administrative prosecutor at parole revocation hearings.

On multiple occasions throughout 2017, plaintiff sought promotion to Supervising Parole Officer ("Bureau Chief"). Bureau Chief is a supervisory position that manages parole operations within a specific geographic area or defined bureau. A candidate seeking promotion to Bureau Chief must take a Civil Service examination, submit a resume, and complete a substantive interview before a panel. Candidates may interview for multiple Bureau Chief positions in a

---

[2] The Court may treat plaintiff's failure to respond to defendants' 56.1 statement as an admission of the facts contained therein. See Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000). Plaintiff's "objection as to submission of 'undisputed facts'" in her opposition contains no record citations and cannot contradict properly cited facts in defendant's 56.1 statement. See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (noting that district court may disregard an assertion on summary judgment that is unsupported by the record); Nigro v. Dwyer, 438 F. Supp. 2d 229, 231 (S.D.N.Y. 2006) (non-movant's "failure to comply with Rule 56.1 permits the Court to deem the facts in [movant's] Rule 56.1 Statement uncontroverted"). Nevertheless, the uncontroverted facts will still be viewed in a light most favorable to plaintiff.

[3] The parties dispute whether the individual defendants knew that plaintiff is Jewish, but there is no dispute that the individual defendants knew that plaintiff is white. Construing the facts in the light most favorable to plaintiff, I assume for purposes of this motion that because plaintiff says she openly practiced her religion, the individual defendants knew that she was Jewish.

2

single interview if more than one position is available at the time. Generally, there are three interviewers on each panel. Panel members score interviewees' answers to standardized interview questions. After the interviews, the panel members discuss their impressions and submit their recommendations and the reasons for them. The panel's recommendations must be unanimous.

Plaintiff took the Civil Service exam, graded in five-point increments, and scored 80. Plaintiff was interviewed for Bureau Chief positions in January, April, May, August, and December 2017.[4] Plaintiff was not promoted for any position. Every promoted candidate was black except one, promoted in December, who was Hispanic. The Bureau Chief positions for which plaintiff interviewed in 2017 and the candidates considered for each are summarized in this table and described in further detail below.

---

[4] Plaintiff also interviewed for Bureau Chief in December 2018. Plaintiff did not allege any claim or facts regarding this interview in the Complaint, so I do not consider it here.

| Interview Position | JANUARY | | APRIL | | MAY |
|---|---|---|---|---|---|
| | Bronx 1 | Brooklyn 2 | Manhattan 2 | Manhattan 3 | Brooklyn 1 |
| Candidates | Plaintiff (W)(80) <br> *Uzzell (B)(80) <br> Knight (B)(80) <br> DeJesus (H)(80) <br> Welch (B)(80) <br> Oliver (B)(80) <br> Benjamin (B)(85) <br> Shaw (B)(85) | Plaintiff (W)(80) <br> Uzzell (B)(80) <br> Knight (B)(80) <br> DeJesus (H)(80) <br> *Welch (B)(80) | Plaintiff (W)(80) <br> Shaw (B)(85) <br> *Oliver (B)(80) <br> Knight (B)(80) | Plaintiff (W)(80) <br> *Shaw (B)(85) <br> Knight (B)(80) <br> Cappiello (W)(85) | Plaintiff (W)(80) <br> *Uzzell (B)(80) <br> Oliver (B)(80) <br> Knight (B)(80) <br> Shaw (B)(85) |

| Interview Position | AUGUST | | | | DECEMBER |
|---|---|---|---|---|---|
| | Bronx 1 | Bronx 2 | Bronx 4 | Bronx 5 | Manhattan 2 |
| Candidates | Plaintiff (W)(80) <br> *Jean-Baptiste (B)(75) <br> Wyns (B)(75) <br> Armstrong (B)(75) <br> Jones (B)(75) <br> Camacho (H)(75) <br> Adams (B)(75) <br> Knight (B)(80) <br> Medina (H)(75) | Plaintiff (W)(80) <br> Jean-Baptiste (B)(75) <br> Wyns (B)(75) <br> *Armstrong (B)(75) <br> Jones (B)(75) <br> Camacho (H)(75) <br> Adams (B)(75) <br> Knight (B)(80) <br> Medina (H)(75) | Plaintiff (W)(80) <br> Wyns (B)(75) <br> *Jones (B)(75) <br> Camacho (H)(75) <br> Adams (B)(75) <br> Knight (B)(80) <br> Medina (H)(75) | Plaintiff (W)(80) <br> Wyns (B)(75) <br> Jones (B)(75) <br> Camacho (H)(75) <br> Adams (B)(75) <br> *Knight (B)(80) <br> Medina (H)(75) | Plaintiff (W)(80) <br> *Medina (H)(75) <br> Wyns (B)(75) <br> Cappiello (W)(85) <br> Adams (B)(75) <br> Ruffin (B)(75) |

[1] Candidate's race/ethnicity (W = White, B = Black, H = Hispanic) and Civil Service Examination score in parentheses.

[2] Promoted candidate marked with asterisk (*).

In January, plaintiff interviewed for two available Bureau Chief positions. Plaintiff was one of eight candidates for the first position and one of five candidates for the second position. For the first position, six candidates were black, one was Hispanic, and one (plaintiff) was white and Jewish. For the second position, three candidates were black, one was Hispanic, and one (plaintiff) was white and Jewish. The selected candidates, Kevin Uzzell and Raquel Welch, had scored 80 on the exam, worked at DOCCS or its predecessor since 1991, and held SPO positions since 2007.

Defendants Drayton and Joseph were on the January interview panel. Ms. Drayton's and Mr. Joseph's contemporaneous notes from the interviews detail and score the interviewees' responses to questions. Ms. Drayton scored Mr. Uzzell 18/30, Ms. Welch 20/30, and plaintiff 6/30. Mr. Joseph scored Mr. Uzzell 18/25, Ms. Welch 20/25, and plaintiff 6.5/25. Ms. Drayton and Mr. Joseph concluded that the promoted candidates performed better on all questions in their

4

interviews, providing more detailed and specific responses and demonstrating a greater knowledge of Bureau procedures and ability to lead.

For example, the candidates were asked about a scenario involving a complaint of bullying from a supervisee. The promoted candidates said they would, among other things, formally document the complaint and notify supervisors and specific departments about the need for an investigation. Plaintiff said she would speak to the individuals accused of building, take steps to remedy the situation, follow-up, and break up cliques. Ms. Drayton contends that this response was inadequate because it contained few specifics and failed to mention notifying superiors, creating a documentary record, or the need for a formal investigation.

In another scenario, the candidates were tested on their knowledge of a requirement that supervisees conduct Case Conferences twice per month and how they would address noncompliance. The promoted candidates identified the issue and offered multi-step strategies that they would use to determine why compliance was low, what tools could help improve compliance, how to adjust supervisees' schedules to ensure compliance, and how they would monitor compliance going forward. Plaintiff said only that she would like the supervisees to conduct the conferences twice a month. Ms. Drayton contends that this response was inadequate because it suggested that plaintiff was unaware of the existing policy requiring twice-a-month meetings and because plaintiff did not identify any proactive steps she would take to ensure compliance.

In April, plaintiff interviewed for two available Bureau Chief positions. Four candidates were considered for each position. For the first position, three candidates were black and one (plaintiff) was white and Jewish. For the second position, two candidates were black and two were white, including plaintiff. The selected candidates, Yvonne Oliver and Leleith Shaw,

5

scored 80 and 85 on the exam, respectively, had many years of service to DOCCS, and held PRS positions like plaintiff, although Ms. Shaw's PRS position was senior to plaintiff's position.

Ms. Drayton was on the interview panel in April. There are no contemporaneous notes from the interviews, but Ms. Drayton completed an assessment at the time setting out her impressions of the candidates. For plaintiff, Ms. Drayton noted: "Candidate demonstrates strengths relating to the Parole Revocation Process and how her expertise would benefit the Region. However, during this interview, candidate did not offer the strongest interview re knowledge of what it takes to run a Bureau." Ms. Drayton, who was on the panel in January as well, concluded that plaintiff's interview performance had not improved.

In May, plaintiff interviewed for one available Bureau Chief position. Five candidates were considered for the position. For this position, four candidates were black and one (plaintiff) was white and Jewish. The selected candidate, Kevin Uzzell, had scored 80 on the exam, had many years of service to DOCCS, and was an existing Bureau Chief seeking a transfer.

Mr. Joseph was on the interview panel in May. One of the other two interviewers was Jewish, and both were white. Mr. Joseph does not have his own notes from the interviews but did contemporaneously score the interviewees' responses to six questions out of thirty. Mr. Joseph scored the selected candidate either 26/30 or 27/30 and scored plaintiff 18.5/30. Mr. Joseph concluded that Mr. Uzzell demonstrated greater leadership skills and knowledge of policies and procedures than plaintiff.

In August, plaintiff interviewed once for four available Bureau Chief positions. Nine candidates were considered in all. Of these candidates, six were black, two were Hispanic, and one (plaintiff) was white and Jewish. The promoted candidates – Gail Jean-Baptiste, Jennifer Armstrong, Derek Jones, and Roger Knight – had many years of service to DOCCS. Mr. Knight

6

scored 80 on the exam and the other three promoted candidates scored 75.  Ms. Jean-Baptiste held a PRS position like plaintiff and the other three had held supervisory SPO positions for at least five years preceding the interview.

Ms. Harvey was on the interview panel in August with two other interviewers, one of whom was white.  There are no contemporaneous notes from the interviews, but the panel completed assessments at the time that set out the panel's impressions of the candidates:

- Ms. Jean-Baptiste "display[ed] an understanding of the responsibilities of the position and a wealth of knowledge regarding agency policies.  She was able to apply the policies to the questions asked and distinguished herself as an excellent candidate for appointment to the Supervising Parole Officer position."

- Ms. Armstrong "distinguished herself as highly knowledgeable and experienced" and "was able to apply agency policy to the various questions and will be an asset" to the bureau.

- Mr. Jones "displayed a wealth of knowledge and experience" and was "well suited" to the "managerial responsibilities" of Bureau Chief.

- Mr. Knight "displayed knowledge and understanding of DOCCS missions and goals.  His experience as a supervisor . . . and his hard work couple[d] with all other factors as indicated during the interview process make him an excellent candidate for appointment."

- Plaintiff "meets the qualifications for consideration for appointment" and "displays knowledge of agency policy and basic understanding of the Bureau Chief functions.  However, at this time a more suitable candidate has been identified and selected."

In November, Mr. Joseph met with plaintiff to explain that she was not promoted because she did not perform well in her interviews.  Mr. Joseph suggested that plaintiff reach out to him or Regional Directors for advice on interview performance.  Plaintiff did not reach out to Mr. Joseph or any other official to discuss her interview performance.

In December, plaintiff interviewed for one available Bureau Chief position.  Six candidates were considered for the position.  For this position, three candidates were black, one was Hispanic, and two were white, including plaintiff.  The selected candidate, Miguel Medina,

7

scored 75 on his exam, had many years of service to DOCCS, and held a supervisory SPO position.  Mr. Medina was later removed from the position of Bureau Chief.

Ms. Drayton and Ms. Harvey were on the interview panel in December.  Ms. Drayton's and Ms. Harvey's contemporaneous notes from the interview detail the interviewees' responses to interview questions and a writing sample.  Ms. Drayton and Ms. Harvey scored Mr. Medina 18/20 and plaintiff 10.5/20.  Ms. Drayton and Ms. Harvey concluded that Mr. Medina demonstrated a better understanding of applicable procedures and law and a greater ability to handle personnel matters.

For example, the candidates were asked about a scenario involving a report that a Parole Officer ("PO") is having an intimate relationship with a parolee.  The selected candidate said he would review the Prison Rape Elimination Act ("PREA") Directive, state law, and DOCCS policy forbidding such intimate relationships, report the incident to his supervisor, and seek more information.  The selected candidate did not get full marks on this answer.  Plaintiff said she would inform a supervisor, investigate the allegation, and counsel the PO on disciplinary action.  Ms. Drayton and Ms. Harvey determined that plaintiff's response was inadequate because she did not mention PREA.  PREA prohibits POs from having intimate relationships with parolees and all DOCCS staff members receive annual training on PREA.

Plaintiff suggests that she filed complaints of discrimination in connection with DOCCS's failure to promote her with her union, DOCCS's department of human resources, and the United States Equal Employment Opportunity Commission at some point in 2017 or 2018.

## DISCUSSION

Summary judgment is warranted upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.

8

"The burden is on the moving party to establish the absence of any material factual issues." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)).

## I. Title VII

Title VII claims are analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 92 (2d Cir. 2013). "At the first stage of McDonnell Douglas, a plaintiff 'bears the burden of establishing a *prima facie* case of discrimination,' which includes demonstrating that 'he suffered an adverse employment action . . . under circumstances giving rise to an inference of discriminatory intent.'" Id. (quoting Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)). "Once the *prima facie* case has been shown, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." Maraschiello, 709 F.3d at 92 (quoting United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011)). If the employer comes forward with admissible evidence of a legitimate nondiscriminatory reason for its adverse employment decision, the plaintiff is given an opportunity to adduce admissible evidence sufficient to permit a rational finder of fact to infer that the employment decision was more likely than not based in whole or in part on discrimination. See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014).

### A. Plaintiff's *prima facie* case

To establish a *prima facie* case, plaintiff must show that she: "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4)

that the circumstances of the adverse employment decision give rise to an inference of discrimination." Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003). Plaintiff's burden is "*de minimis*." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001). "The requirement is neither onerous, nor intended to be rigid, mechanized, or ritualistic." Id. (internal quotation marks and citations omitted).

The parties do not dispute that (i) plaintiff is a member of a protected class by virtue of her race and religion; (ii) she was qualified for the Bureau Chief position and was denied it; and (iii) failure to promote is an adverse decision for purposes of Title VII, see Tolbert v. Smith, 790 F.3d 427, 436 (2d Cir. 2015). At issue for plaintiff's *prima facie* case is whether she has identified sufficient facts for an inference of discrimination.

"Employers are unlikely to leave a 'smoking gun' admitting a discriminatory motive." Tolbert, 790 F.3d at 438. "[S]uch evidence is not required to make a prima facie case of discrimination." Id. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to'" an adverse employment decision. Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). "[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class," id. at 312-13, or may arise if there are departures from procedural regularity in the employment decision combined with discriminatory remarks, see Tolbert, 790 F.3d at 438 (citing Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 124-25 (2d Cir. 2004)).

Plaintiff has shown a *prima facie* case of employment discrimination. The undisputed evidence establishes that plaintiff interviewed five times for ten open Bureau Chief positions, and each position was filled by an individual outside plaintiff's protected classes. Plaintiff and the promoted candidates were similarly situated in that all had strong resumes, many years of service to DOCCS, and similar test scores on the qualifying exam. The repeated promotion of individuals outside plaintiff's protected classes is sufficient to raise the inference of discrimination necessary for plaintiff to carry her *de minimis* burden.

B.   DOCCS's proffered reason

DOCCS claims that it has a legitimate, nondiscriminatory reason for failing to promote plaintiff, arguing that plaintiff consistently underperformed in interviews as compared to the promoted candidates.

"[T]here is nothing unlawful about an employer[] basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 104 (2d Cir. 2001) (citation omitted). The same is true for promotion decisions. See Moy v. Perez, 712 F. App'x 38, 42 (2d Cir. 2017); Blanco v. Brogan, 620 F. Supp. 2d 546, 560 (S.D.N.Y. 2009). But "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion." Byrnie, 243 F.3d at 104 (quoting Knight v. Nassau Cty. Civil Serv. Comm'n, 649 F.2d 157, 161 (2d Cir. 1981). If an employer relies on subjective standards, the "'explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" Id. at 105 (quoting Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985)). "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn.'" Id. (quoting Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980)).

11

The record shows that promotion to Bureau Chief is highly competitive. Candidates must take a qualifying exam and do well on it, submit detailed resumes, and perform at a substantive interview before a panel. There are frequently four to nine qualified candidates interviewed for each available position. These candidates consistently have the same exam score (plus or minus one grade point), ten- to twenty-plus years of service to DOCCS, and similar job experience. Because the candidates' qualifications on paper are so similar, interview performance is an important factor in the promotion decision.

Interviews for Bureau Chief are highly standardized. Each candidate is interviewed by a three-member panel. The interviews consist of four to six questions – the same for each candidate – involving substantive scenarios that the candidate might encounter as Bureau Chief. Each interviewer contemporaneously scores the candidate's answers, and frequently takes notes on the substance of the responses as they are given. The panel compares the scores awarded and must unanimously recommend the candidate to be promoted, at which point the panel also fills out an evaluation explaining why each candidate was or was not recommended for promotion.

DOCCS has submitted substantial admissible evidence to support its position that plaintiff was not promoted to Bureau Chief because she consistently underperformed in interviews as compared to the promoted candidates. At each interview, the interviewers perceived that plaintiff, while generally qualified, did not display the knowledge required to run the Bureau effectively. The interviewers' affidavits articulate specific reasons for why they came to that conclusion for each open position, breaking down the candidates' answers and the interviewers' perception of the candidates' knowledge and performance. The interviewers explain that the promoted candidates detailed how they would use applicable policies, procedures, and documents to address potential job scenarios, and displayed a willingness to take

a strong leadership role in questions designed to test the candidates' ability and willingness to supervise others.

By contrast, plaintiff's responses contained fewer specifics, often did not reference the applicable law, policy, or procedure being tested by the question, and displayed a less proactive approach to leadership. The interview question score sheets, interviewer notes, and candidate evaluations – kept in the normal course of business and filled out contemporaneously with the interviews – amply support defendants' position.

Plaintiff was aware that her interview performance was a problem. Plaintiff admits she was told on multiple occasions that she "didn't interview well." In November 2017, defendant Joseph met with plaintiff and suggested that plaintiff reach out to him or others for advice on interview performance. Plaintiff did not do so. Defendants reason that plaintiff's poor performance might be due in part to the fact that plaintiff's supervisory experience was stale. Plaintiff had not held a supervisory role at DOCCS since the mid-2000s, while the promoted candidates either had active supervisory assignments or more recent supervisory experience. Plaintiff admitted that many policies had changed since she had been an SPO. Plaintiff briefly transferred to a supervisory role in September 2018, thinking it would put her in a better position to be promoted to Bureau Chief, but returned to her prior assignment a few months later.

C. Pretext

Faced with defendants' evidence of a legitimate nondiscriminatory reason for failing to promote plaintiff, to survive summary judgment plaintiff must submit admissible evidence sufficient to permit a rational finder of fact to infer that the employment decision was more likely than not based in whole or in part on discrimination. See Kirkland, 760 F.3d at 225. "A plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion." Walsh v. New York City Hous. Auth., 828 F.3d 70,

13

76 (2d Cir. 2016). "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination." Id. But arguments founded on "speculation and conjecture" are insufficient because a factfinder may not rely on "guesswork or theorization." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999).

      Plaintiff argues that defendants' proffered reason is pretext for unlawful discrimination. Plaintiff's only submitted evidence is her own testimony. Even when considered as a whole and in a light most favorable to her, plaintiff's evidence merely presents her subjective beliefs and suspicions as to why she was not promoted and is wholly speculative.

      Plaintiff's primary argument is that she was more qualified than the promoted candidates. "When arguing that a discrepancy in qualifications supports an inference of pretext, a plaintiff's burden is high," Pippin v. Town of Vernon, 660 F. Supp. 2d 354, 365 (D. Conn. 2009), because the claimed discrepancy bears "the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." Byrnie, 243 F.3d at 103. "In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. (citation omitted).

      Here, it is undisputed that plaintiff and the promoted candidates all were highly qualified for the Bureau Chief position and had many years of experience at DOCCS, but plaintiff claims without support that she had more "seniority" and "experience" than every promoted candidate and that "her work history record was pristine." Plaintiff provides few details to support her

claims and, even if I ignore the candidates' interview performance, the record as a whole shows that plaintiff's credentials were not "so superior" that no reasonable person could have chosen the promoted candidates. See Byrnie, 243 F.3d at 103.

- January 2017: The promoted candidates had the same exam score as plaintiff, had been with DOCCS or its predecessor for over twenty-five years like plaintiff, and had been in supervisory SPO roles (considered relevant experience for the Bureau Chief position) more recently than plaintiff. Plaintiff argues that she had "more experience" and "more seniority" than the promoted candidates and had "training as a drug-abuse counselor" when they did not.

- April 2017: One of the promoted candidates had the same exam score and job title as plaintiff. The other promoted candidate had a higher exam score and a job title that was supervisory to plaintiff's position. Plaintiff argues that she had "more seniority" than the promoted candidates.

- May 2017: The selected candidate was a current Bureau Chief (promoted in January 2017) who sought transfer. He had the same exam score as plaintiff, had been with DOCCS or its predecessor for over twenty-five years like plaintiff, and had experience as a Bureau Chief.

- August 2017: The four selected candidates had many years of service to DOCCS. All but one had held supervisory SPO positions for at least five years preceding the interview, while the other was a PRS like plaintiff and had been a field PO (considered relevant experience for the Bureau Chief position) as recently as 2012. Three of the selected candidates scored 75 on the exam – one grade point below plaintiff – and one scored 80 like plaintiff. Plaintiff argues she had "more seniority" than the promoted candidates.

- December 2017: The selected candidate had been with DOCCS or its predecessor longer than plaintiff, had held a supervisory SPO position continuously since 2004, except for a month when he served as acting Bureau Chief, and scored 75 on the exam, one grade point below plaintiff. Plaintiff argues she had "more applicable experience" and "had held more job titles" than the promoted candidate. Plaintiff also notes that this candidate was later removed from the Bureau Chief position.

The record is clear that each promoted candidate had qualifications similar to those of plaintiff. The interviewers considered all of the candidates, including plaintiff, to be qualified for the position of Bureau Chief. At best, the evidence supports a conclusion that DOCCS "was choosing from among a number of applicants, none of whose applications reflected qualifications far stronger than the others." Pippin, 660 F. Supp. 2d at 366. "In this

15

circumstance 'the court must respect the employer's unfettered discretion to choose among qualified candidates.'" Id. (quoting Byrnie, 243 F.3d at 103).

Plaintiff also appears to argue that DOCCS's use of subjective criteria in evaluating plaintiff for promotion establishes pretext in and of itself. This facial challenge is directly contradicted by the case law, see Byrnie, 243 F.3d at 104, and the record does not present any evidence to suggest that the evaluation of plaintiff's interview performance was colored by impermissible bias. Plaintiff has never alleged that any individual at DOCCS ever commented on her race or religion in any way. Plaintiff interviewed multiple times before different panels, and more than one included an interviewer from her protected classes, including the May 2017 panel that was majority white and had an interviewer who was Jewish. Each panel unanimously decided to promote a different candidate over plaintiff and documented the reasons why. Plaintiff has not put forth any evidence to support her personal belief that the evaluations of her interview performance were the result of unlawful discrimination.

Plaintiff's other global claims do not compel a different conclusion. Plaintiff argues that the promotion of candidates outside her protected class mandates a conclusion of discrimination. It does not. The fact that DOCCS repeatedly promoted candidates of a different race and religion than plaintiff was sufficient to satisfy plaintiff's minimal burden on her *prima facie* case but is insufficient for a reasonable trier of fact to conclude that DOCCS's reasons are a pretext to mask unlawful discrimination. Plaintiff further claims that it is well known at DOCCS that "alliances are formed on the basis of race," and that her "union recognized that the agency overtly discriminated against her." These statements are conclusory and not supported by any facts in the record.

Plaintiff's claims about specific interview periods are similarly misguided and lacking in evidentiary support.  Plaintiff questions if the reason that the promoted candidate in May 2017 – a Bureau Chief who sought transfer while still on probation for his recent promotion – had greater knowledge and performed better than plaintiff in the interview was because he had already worked in that role for three months.  Perhaps.  But that is not "evidence of an overt action resulting in discrimination" as plaintiff claims, but rather a legitimate, nondiscriminatory explanation for why one candidate's experience and interview performance was superior.  Plaintiff further hypothesizes that the transfer was "manufactured . . . in order to keep [plaintiff] from obtaining the position," but there is not a shred of evidence to support this conspiracy theory.

For August 2017, plaintiff claims without support that the promoted candidates were "good friends" with others at the agency.  Those individuals were not involved in the interview process and so their relationships are irrelevant.  In any event, plaintiff does not explain why promotion based on friendship would implicate unlawful discrimination.

For December 2017, plaintiff complains that a written question was added to the interview and the prompt for the question was missing information needed to answer it, so she could not answer it properly.  But this change impacted all candidates and plaintiff does not even suggest that the addition had any discriminatory motive or effect.  Plaintiff further notes that the candidate promoted in December was later removed from the position of Bureau Chief.  A promoted candidate's failure to live up to expectations is not evidence of pretext if there was no reason to doubt his qualifications at the time of promotion.  See Pippin, 660 F. Supp. 2d at 366.  Plaintiff does not claim that there was any reason to suspect that the candidate was unqualified at the time he was promoted.

DOCCS is entitled to summary judgment on plaintiff's Title VII claim.

## II. Section 1983

Plaintiff also brings claims against the individual defendants under 42 U.S.C. § 1983 for their personal involvement in the promotion of candidates after the May, August, and December 2017 interviews. The same standards apply to plaintiff's § 1983 claims as her Title VII claims. See Demoret v. Zegarelli, 451 F.3d 140, 153 (2d Cir. 2006) ("Title VII claims for disparate treatment parallel the equal protection claims brought under § 1983. The elements of one are generally the same as the elements of the other and the two must stand or fall together." (internal quotation marks and citations omitted)); St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 303 (E.D.N.Y. 2014) ("Under Title VII, § 1983 and the NYSHRL, disparate treatment religious discrimination claims are assessed using" the same burden-shifting framework established by McDonnell Douglas.); see also Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (noting that the factors justifying summary judgment dismissing plaintiff's Title VII claim equally support the summary dismissal of his claim under § 1983). Because, as described above, no reasonable trier of fact could conclude that unlawful discrimination was behind the failure to promote plaintiff, the § 1983 claims against the individual defendants for their involvement fail.

The individual defendants are entitled to summary judgment on plaintiff's § 1983 claims.

## CONCLUSION

Defendants' motion for summary judgment is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 21, 2020

                                              U.S.D.J.